UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANITA HARRIS,

      Plaintiff,                            Case No. 13-cv-13519
                                              Hon. Matthew F. Leitman

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## OPINION AND ORDER DENYING PLAINTIFF'S [9] MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S [10] MOTION FOR SUMMARY JUDGMENT

In mid-2007, after 24 years of employment in health care and related fields, Plaintiff Anita Harris left her job as a licensed practical nurse. According to Plaintiff, she was no longer able to work due to various medical conditions, including diabetes and a persistent ulcer on her right leg that required multiple hospitalizations. Plaintiff contends that these conditions, among others, entitle her to disability benefits.

On December 23, 2010, Administrative Law Judge Patricia McKay (the "ALJ") found that Plaintiff was not entitled to benefits. Plaintiff thereafter appealed the ALJ's decision to the Social Security Appeals Council (the "Appeals Council"), which denied Plaintiff's request for review of the ALJ's decision.

1

Plaintiff then filed this action. Plaintiff and Defendant the Commissioner of Social Security ("the Commissioner") have now filed cross-motions for summary judgment. (*See* ECF #9 and ECF #10.) For the reasons set forth below, the Court **GRANTS** the Commissioner's motion for summary judgment (ECF #10) and **DENIES** Plaintiff's motion (ECF #9).

## PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and supplemental security income on May 9, 2006. In her applications, Plaintiff alleged that she had been disabled since June 1, 2005, due to degenerative arthritis, diabetes, and high blood pressure.[1] (*See* TR at 287.) The Commissioner denied benefits. (*Id.* at 181, 185.) Plaintiff retained counsel and requested a *de novo* hearing, which was held on September 23, 2008, before the ALJ (the "first hearing"). (*Id.* at 84-158.) After hearing testimony from Plaintiff and vocational expert Pauline Pegram ("Pegram"), the ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act") because Plaintiff was capable of performing her past relevant work as a "nurse/records-co-coordinator." (*Id.* at 173.) Plaintiff appealed the ALJ's decision, and on October 29, 2009, the Appeals Council granted her request for review. (*Id.* at 178-80.) The Appeals Council remanded the case to the ALJ for further consideration of medical evidence relating to

---

[1] As discussed further below, although Plaintiff alleged that her disability onset date was June 1, 2005, she continued to work at least part-time until 2007.

Plaintiff's right leg injury.  (*Id.* at 178-80.)

On remand, the ALJ held another hearing on October 4, 2010 (the "second hearing").    After hearing testimony from Plaintiff and a different vocational expert, Jennifer Turecki ("Turecki"), the ALJ again found that Plaintiff was not disabled within the meaning of the Act.  (*Id.* at 20-38.)  As described in more detail below, after the second hearing, the ALJ found that Plaintiff was not entitled to benefits because she was capable of performing a significant number of jobs in the national economy.  (*Id.* at 32-34.)  Plaintiff appealed the ALJ's decision, and on June 17, 2013, the Appeals Council denied her request for review.  (*Id.* at 1-6.) Plaintiff subsequently filed this action, and the parties filed cross-motions for summary judgment. (*See* ECF #9 and ECF #10.)

## APPLICABLE LAW

### A.    Framework for Social Security Determinations

The Act "entitles benefits to certain claimants who, by virtue of a medically determinable physical or mental impairment of at least a year's expected duration, cannot engage in 'substantial gainful activity.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (*quoting* 42 U.S.C. § 423(d)(1)(A)). A claimant qualifies as disabled "if she cannot, in light of her age, education, and work experience, 'engage in any other kind of substantial gainful work which exists in the national economy.'" *Id* (*quoting* 42 U.S.C. § 423(d)(2)(A)).

3

Under the authority of the Act, the Social Security Administration (the "SSA") has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(4). The five steps are as follows:

> In step one, the SSA identifies claimants who "are doing substantial gainful activity" and concludes that these claimants are not disabled. [20 C.F.R.] § 404.1520(a)(4)(i). If claimants get past this step, the SSA at step two considers the "medical severity" of claimants' impairments, particularly whether such impairments have lasted or will last for at least twelve months. *Id.* § 404.1520(a)(4)(ii). Claimants with impairments of insufficient duration are not disabled. *See id.* Those with impairments that have lasted or will last at least twelve months proceed to step three.
>
> At step three, the SSA examines the severity of claimants' impairments but with a view not solely to their duration but also to the degree of affliction imposed. *Id.* § 404.1520(a)(4)(iii). Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the SSA's special list of impairments, or that is at least equal in severity to those listed. *Id.* § 404.1520(a)(4)(iii), (d). The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. *See Sullivan v. Zebley,* 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). A person with such an impairment or an equivalent, consequently, necessarily satisfies the statutory definition of disability. For such claimants, the process ends at step three. Claimants with lesser impairments proceed to step four.
>
> In the fourth step, the SSA evaluates claimant's "residual functional capacity," defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). Claimants whose residual functional

> capacity permits them to perform their "past relevant work" are not disabled. *Id.* § 404.1520(a)(4)(iv), (f). "Past relevant work" is defined as work claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1). Claimants who can still do their past relevant work are not disabled. Those who cannot do their past relevant work proceed to the fifth step, in which the SSA determines whether claimants, in light of their residual functional capacity, age, education, and work experience, can perform "substantial gainful activity" other than their past relevant work. *See id.* § 404.1520(a)(4)(v), (g)(1). Claimants who can perform such work are not disabled. *See id.;* § 404.1560(c)(1).

*Combs,* 459 F.3d at 642–43. "Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that [ ]he is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). If the analysis reaches the fifth step, the burden transfers to the Commissioner.  *See Combs*, 459 F.3d at 643. At that point, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her [residual functional capacity ("RFC")] and considering relevant vocational factors." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

**B.     This Court's Standard of Review**

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited:  the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.,* 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007), *quoting Cutlip v. Sec'y of Health & Human Servs*., 25 F.3d 284, 286 (6th Cir. 1994).   If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion."  *Cutlip*, 25 F.3d at 286 (internal citations omitted); *see also Mullen v. Bowe*n, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes ... a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

6

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512–13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.,* 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.,* 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). Further, this Court does "not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247.

## **RELEVANT FACTUAL BACKGROUND**

### **A. Plaintiff's Testimony: Medical and Occupational Histories**

### *1. Medical History*

At the first hearing, Plaintiff testified that she had been unable to work since June 30, 2007. (TR at 111.) Plaintiff claimed that she suffered from diabetes (*id.* at 93), degenerative arthritis in her knee, joints, and back (*id.* at 100), and anemia (*id.*). Plaintiff testified that she had been repeatedly hospitalized over the past two years for treatment of infections related to her diabetes. (*Id.* at 93, 99.) She also testified that in January 2007, she suffered a burn on her right leg from a space

7

heater and that the burn had developed into a persistent ulcer.  (*Id.* at 93, 98-99.)
Plaintiff said that her sleep was frequently disrupted by pain. (*Id.* at 94-95, 112.)
Plaintiff noted that she was taking Glipizide for her diabetes (*id.* at 100) and she
was also taking Vancomycin, Darvocet, and Motrin (*id.* at 110).

Plaintiff further testified that as a result of her ulcer she had to keep her feet
elevated.  (*Id.* at 94.)  According to Plaintiff, she had to change the bandages on the
ulcer three times per day.  (*Id.* at 102.)  Plaintiff also said that she was prescribed a
cane in early 2007 and that she used it for balance any time that she was on her
feet.  (*Id.* at 104.)  Finally, Plaintiff asserted that she could sit only for 20 minutes
at a time.  (*Id.* at 105.)  Plaintiff testified that she weighed 308 pounds and was 5-
feet and 3-inches tall. (*Id.* at 90.)

At the second hearing, Plaintiff again testified about the arthritis in her knees
(*id.* at 47), her diabetes (*id.* at 54), and anemia (*id.* at 55).  Plaintiff testified that
although the ulcer on her leg had healed, her leg still swelled and was painful.  (*Id.*
at 49.)  Plaintiff further testified that she would have to keep her leg elevated above
her waist indefinitely.  (*Id.* at 50.)  Plaintiff testified that her inability to sit had
gotten worse since the first hearing.  (*Id.* at 55.)  She stated that she could stand for
only 30 minutes and that in order to get comfortable she had to lay down.  (*Id.* at
55-56.)  Plaintiff testified that she was unable to walk without a cane.  (*Id.* at 56.)

8

In addition, Plaintiff testified that she suffered a fall in 2009 and tore the rotator cuff on her right (dominant) side. (*Id.* at 50-51.) Plaintiff testified that since the fall she had experienced numbness from her right shoulder blade through her arm. (*Id.* at 52.) Plaintiff also testified that the numbness occasionally switched from her right side to her left side. (*Id.*) Plaintiff said that she was in extreme pain from the fall and that she experienced migraine headaches. (*Id.* at 53.)

Plaintiff indicated that she was taking Glipizide and Intelol for diabetes, Lisinopril for high blood pressure, Zocor for high cholesterol, iron supplements for anemia, Atarax for anxiety, and several pain medications. (*Id.* at 55.) She additionally testified that she experienced insomnia, nightmares, dry mouth, and an upset stomach as side effects from the medications, and that she napped for two hours every day. (*Id.* at 60.)

### 2. Occupational History

At the first hearing, Plaintiff testified that she had an associate's degree in liberal arts and that she went to vocational school for one year to become a licensed practical nurse. (*Id.* at 91.) Plaintiff testified that she had held various jobs, mostly in the medical field. For instance, Plaintiff testified that for the previous 10 years, she had worked in home health care, with some clinical responsibilities, including wound care, administering medication, and giving

9

injections.  (*Id.* at 114.)  Plaintiff stated that she was responsible for charting, but it was not computer-based.  (*Id.*)  Plaintiff also testified that she worked in a substance abuse clinic where she performed data entry from 1992 until 1995.[2]  (*Id.* at 114-15, 127.)  Plaintiff further stated that she had been a nanny for three years for an autistic child.  (*Id.* at 116-18.)  Finally, Plaintiff testified that she had been a contract transport nurse for a school from approximately 2004 until 2007.  (*Id.* at 119, 126.)

At the second hearing, Plaintiff again testified about her jobs as a licensed practical nurse, home health aide, and contract transport nurse.  (*Id.* at 48, 60-61.) She also described a job she held as a medical receptionist in a doctor's office.[3] (*Id.*)  Plaintiff testified that in her role as a medical receptionist, she discharged patients (*id.* at 48) and assisted with the doctors' examinations (*id.* at 64). Specifically, she said that she assisted with "vaginal exams" and "injections."  (*Id.* at 65.)  Plaintiff testified that she gave the doctors "instruments they needed for the exams" and "gave patients discharge instructions [and] set up their appointments for the surgery."  (*Id.* at 64-65.)  Plaintiff stated that she was not required to do any typing in her job as a medical receptionist.  (*Id.* at 73.)

---

[2]  Plaintiff initially testified that she worked in the substance abuse clinic "[m]aybe six months … [t]o a year … in the '90s."  (*Id.* at 114.)  She later clarified that she worked there from 1992 until 1995.  (*Id.* at 127.)
[3]  Based on the description of Plaintiff's responsibilities, this job appears to be distinct from Plaintiff's job in the substance abuse clinic.  However, at various points in the record, both jobs are referred to as "medical receptionist."

Plaintiff testified at the second hearing that she worked full time until 2005 and then part-time until 2007, in each case because of her medical conditions. (*Id.* at 46-49.)

### B. Plaintiff's Medical Records

As explained further below, the ALJ thoroughly reviewed Plaintiff's medical evidence and summarized her conclusions in each of her two written opinions. (*See id.* at 26-31, 170-73.) Plaintiff does not dispute the ALJ's factual findings with respect to Plaintiff's medical record, nor does Plaintiff dispute the ALJ's conclusion, discussed below, that she has the RFC to perform sedentary work with certain additional exertional limitations. The Court therefore will not restate the full record of medical evidence. The Court has, however, conducted an independent review of Plaintiff's medical record and will incorporate comments and citations as necessary throughout this opinion.

### C. 2008 Proceedings: Vocational Expert Testimony and ALJ Findings

### 1. *Vocational Expert Testimony*

At the first hearing, the ALJ heard testimony from vocational expert Pegram. The ALJ asked Pegram to describe Plaintiff's past work activity from a vocational standpoint. Pegram testified that Plaintiff's prior jobs were all skilled or semi-skilled. Pegram noted that each of the jobs required at least light exertion, except

for the "nurse records coordinator" or "receptionist" at the substance abuse clinic, which was sedentary.  (*Id.* at 122-24.)

The ALJ then asked Pegram to consider a hypothetical person of Plaintiff's age, education, and past relevant work experience who was physically capable of performing light work activities.  (*Id.* at 137.)  Pegram testified that such an individual could perform Plaintiff's past relevant work as a nurse records coordinator.  (*Id.* at 139.)

Pegram also testified that Plaintiff's "medical" and "clinical" skills from her jobs as a licensed practical nurse would be transferrable to other nursing and nursing assistant jobs, such as a medical assistant in a doctor's office or a phlebotomist.  (*Id.* at 129.)  Pegram testified that any computer or clerical skills that Plaintiff may have acquired from her data entry job at the substance abuse clinic would now be obsolete "and would not be transferable."  (*Id.* at 128-29.) Pegram noted that all such jobs to which Plaintiff's medical and clinical skills would transfer would be at the medium or light exertional level.  (*Id.*)  She noted that "[t]here's nothing lower than a light."  (*Id.*)

### 2.  *The ALJ's Initial Findings*

On December 23, 2008, the ALJ issued a detailed opinion in which she determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from June 1, 2005 through the date of this decision."  (*Id.* at 174.)

12

The ALJ reached this conclusion after progressing through the five steps of the evaluation process.  First, the ALJ determined that although Plaintiff engaged in substantial gainful activity after the alleged onset date of June 1, 2005, Plaintiff did not engage in substantial gainful activity after June 30, 2007.  (*Id.* at 169.) Therefore, the ALJ moved to the second step of the evaluation process, in which the ALJ concluded that Plaintiff had the following "severe impairments:" degenerative joint disease in the right shoulder and knees, osteoarthritis, degenerative disc disease, diabetes mellitus with foot and leg ulcerations, obesity, and high blood pressure.  (*Id.*)

Despite these severe impairments, the ALJ held at step three of the evaluation process that none of the impairments, or their combination, "meets or medically equals one of the listed impairments" under applicable SSA rules.  (*Id.*) The ALJ noted that there is no listing for obesity, Plaintiff's back impairment was not accompanied by neurological deficits, and her condition "has not resulted in inability to ambulate effectively (e.g., the inability to walk without the use of a walker, two crutches, or two canes)." (*Id.* at 170.)  The ALJ also noted that Plaintiff's diabetes had not resulted in neuropathy, and her hypertension was controlled with medication.  (*Id.*)

At step four of the evaluation, the ALJ concluded that Plaintiff had "the [RFC] to perform light work," with certain exertional limitations. (*Id.*) Specifically, the ALJ noted that Plaintiff was unable to lift more than 20 pounds occasionally, 10 pounds frequently, stand or walk 6 hours in an 8 hour day, or sit 6 hours in an 8 hour day. (*Id.*) The ALJ also noted that Plaintiff required a sit/stand option and could not perform more than occasional climbing, balancing, stooping, kneeling, crouching, crawling, or overhead reaching. (*Id.*) In making this determination, the ALJ exhaustively reviewed Plaintiff's medical records and explained why Plaintiff's impairments would not prevent her from performing light work with the relevant limitations. (*Id.* at 170-73.) The ALJ also noted that "claimant's allegedly disabling impairments were present at approximately the same level of severity prior to the alleged onset date" and "[t]he fact that the impairments did not prevent the claimant from working at that time strongly suggests that same would not currently prevent work." (*Id.* at 172.)

Also at step four, the ALJ concluded that Plaintiff's RFC enabled her to perform her past relevant work as a "nurse/records-co-coordinator (medical receptionist[)]." (*Id.* at 173.) The ALJ characterized this job as semi-skilled and sedentary. (*Id.*)

Having found that Plaintiff could perform her past relevant work, it was unnecessary for the ALJ to proceed to step five in order to conclude that Plaintiff was not disabled under the Act.  However, the ALJ noted that "[e]ven assuming that the claimant did not have past relevant work as a nurse/records co-coordinator, there are other jobs she could perform."  (*Id.*)  Specifically, the ALJ cited vocational expert Pegram's testimony that, taking into account Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs such as inspecting, sorting, packaging, and hand assembly.  (*Id.* at 174.)  The ALJ stated that 30,000 such jobs exist in Michigan, and half of those jobs are in southeastern Michigan.  (*Id.*)

### D. The Appeals Council Decision

Plaintiff appealed the ALJ's decision, and on October 29, 2009, the Appeals Council granted her request for review.  (*Id.* at 178-80.)  The Appeals Council remanded the case to the ALJ for further consideration of medical evidence relating to Plaintiff's right leg injury.  (*Id.* at 178-80.)  Specifically, the Appeals Council noted that "[a]dditional evidence was received … suggesting the claimant's impairments may be more severe than previously indicated."  (*Id.* at 178.)  The Appeals Council further noted that, in connection with the appeal, Plaintiff "submitted additional evidence consisting of updated medical assessments from treating sources … indicating that her condition has not improved, she cannot

stand and walk for any prolonged period of time, and she must elevate her leg throughout the day." (*Id.*) The Appeals Council found that "further development and evaluation are needed to determine the extent to which the claimant's impairments impact her functional ability." (*Id.* at 178-79.)

The Appeals Council ordered the ALJ, on remand, to "give further consideration" to the treating source opinions and to Plaintiff's maximum RFC. (*Id.*) The Appeals Council authorized the ALJ to "obtain supplemental evidence from a vocational expert to determine whether the claimant has acquired any skills that are transferable with very little, if any vocational adjustment…." (*Id.*)

### E. 2010 Proceedings: Vocational Expert Testimony and ALJ Findings

### 1. *Vocational Expert Testimony*

On remand, the ALJ determined that it was appropriate to obtain supplemental evidence from a vocational expert. At the second hearing, vocational expert Turecki testified that she had reviewed the evidence in the record with respect to Plaintiff's claim and was present for Plaintiff's testimony at the second hearing. (*Id.* at 72.) Turecki testified that a hypothetical person of Plaintiff's age, education, and past relevant work experience who was physically capable for performing sedentary work and had certain additional exertional limitations, including restrictions on reaching overhead, could not perform any of Plaintiff's past relevant work. (*Id.* at 75.) However, Turecki testified that such a hypothetical

claimant could perform the job of general office receptionist.  (*Id.* at 75.)  Turecki further testified that the skills from Plaintiff's job as a medical receptionist would transfer to being a general office receptionist, which is considered semi-skilled and sedentary.  (*Id.* at 73.)  In response to a question from the ALJ, Turecki listed the specific skills that would transfer to the general office receptionist job as "greeting of people and giving them information" and "[a]nswering phones."  (*Id.* at 74.) Turecki testified that, in Southeast Michigan, there were 1,000 general office receptionist jobs that required no typing.  (*Id.* at 74.)

### 2. The ALJ's Findings

On December 23, 2010, the ALJ issued a second opinion in which she again determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from June 1, 2005 through the date of this decision."  (*Id.* at 33.)  At step one, the ALJ again found that Plaintiff engaged in substantial gainful activity through 2007, but not thereafter.  (*Id.* at 25.)  The ALJ proceeded to step two and determined that Plaintiff had the following "severe impairments:" obesity, diabetes with non-healing ulcer of the right leg, degenerative joint disease in the right shoulder, degenerative disc disease of the cervical spine with mild radiculitis, and history of right knee arthroscopy.  (*Id.*)

17

At step three of the evaluation process, the ALJ once again found that Plaintiff did not have "an impairment or combination of impairments that meets or medically exceeds one of the listed impairments…." (*Id.* at 26.) The ALJ reviewed the medical evidence regarding the ulcer on Plaintiff's leg and found that "records reveal the ulcer to have cleared up, with no evidence of recurrent edema." (*Id.*) The ALJ stated that "claimant ambulates effectively, albeit with the reported use of a cane, and does not meet the other highly specific requirements of any musculoskeletal or neurological listing." (*Id.*)

At step four of the evaluation, the ALJ changed her conclusion from the 2008 findings. Specifically, the ALJ found that Plaintiff had the RFC to perform only *sedentary* work. (*Id.* at 27.) The ALJ noted that Plaintiff was limited to "occasional crouching, crawling, kneeling, stooping/bending and climbing of stairs" and must avoid "overhead reaching with the right upper extremity" and climbing ladders. (*Id.*) The ALJ said that Plaintiff must be allowed "some flexibility between sitting and standing while engaged in the work." (*Id.*) In making this determination, the ALJ conducted a thorough review of Plaintiff's medical records, including the records identified by the Appeals Council. (*Id.* at 28-31.) Notably, the ALJ identified medical records indicating that Plaintiff's right leg ulcer had "completely healed" by October 5, 2009. (*Id.* at 30.)

18

Next, the ALJ concluded that Plaintiff was "unable to perform any past relevant work." (*Id.* at 31.) The ALJ stated that Plaintiff's past relevant work included work as a licensed practical nurse, home health care aide, medical receptionist/records clerk, and medical transcriptionist. (*Id.* at 32.) The ALJ noted that "[a]ll of these jobs [are] considered semi-skilled in nature with the nursing position being medium in exertion while the clerical jobs [are] classified as light." (*Id.*) The ALJ reiterated that Plaintiff was limited to sedentary work and found that she was therefore unable to perform any past relevant work. (*Id.*)

At step five of the evaluation, the ALJ concluded that Plaintiff "has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy." (*Id.*) Specifically, the ALJ cited vocational expert Turecki's testimony that Plaintiff had acquired the skills of greeting people, giving information, and answering telephones through her job as a medical receptionist. (*Id.*) The ALJ also cited Turecki's testimony that an individual with the same age, education, past relevant work experience, and RFC as Plaintiff could perform the job of general office receptionist. (*Id.* at 33.) The ALJ further stated that 1,000 such jobs exist in southeast Michigan. (*Id.*) The ALJ also noted that such jobs "would not be adversely impacted by the need to elevate one's feet to footstool level" and "the use of a cane would not interfere with the performance of such jobs." (*Id.*)

19

## ANALYSIS

Plaintiff presents two specific challenges to the ALJ's decision. First, Plaintiff asserts that "the evidence of record does not support the [ALJ's] finding that [P]laintiff acquired work skills from her past relevant work as a medical receptionist." (Pla.'s Br. at 1.) Second, Plaintiff claims that the ALJ erroneously found certain "tasks" to be transferrable skills. (*Id*. at 14-15.) For the reasons discussed below, the Court concludes that the Commissioner's decision is supported by substantial evidence, and Plaintiff's arguments lack merit.

### A. Plaintiff's Work Skills from Past Relevant Work

Plaintiff asserts that the ALJ's finding that she acquired work skills from her past relevant work as a medical receptionist is not supported by substantial evidence. (*Id.* at 7.) Plaintiff cites to vocational expert Pegram's testimony in the first hearing. Specifically, Plaintiff asserts that Pegram "concluded that no transferable skills resulted from [P]laintiff's work as a 'medical receptionist'" and that Plaintiff's "other past work afforded no transferable skills to any other sedentary jobs." (*Id.* at 13.) Plaintiff points to Pegram's statements that Plaintiff's computer skills were so outdated as to be obsolete and that "[t]here's nothing lower than a light" exertional level job to which her past relevant work skills would transfer. (*Id.* at 13, citing TR at 128-29.)

20

Plaintiff also takes issue with the ALJ's reliance on the testimony of the second vocational expert.  Plaintiff contends that Turecki "was not provided a description of [P]laintiff's work at the substance abuse clinic" and "neither testimony from [P]laintiff, nor guidance from the ALJ were offered."  Plaintiff claims that Turecki therefore "erroneously found transferable clerical skills."  (*Id.* at 14.)  Plaintiff maintains that her past relevant work afforded her no transferrable skills to any sedentary positions.  (*Id.* at 12.)

Plaintiff's contentions are without merit.  There is substantial evidence in the record to support the ALJ's conclusion that Plaintiff acquired work skills from her past relevant work as a medical receptionist and that those skills are transferable to being a general office receptionist.  At the second hearing, the ALJ asked Turecki whether "the skills from [Plaintiff's] past work transfer to any other types of jobs." (TR at 73.)  Turecki responded that "[t]he medical receptionist job would" have skills that would transfer to being a general office receptionist, which "would be considered semi-skilled and sedentary."  (*Id.*)  The ALJ also asked Turecki to identify the "specific skills from [the medical receptionist job] that transfer to the general office receptionist" job.  (*Id.* at 74)  Turecki identified "greeting of people and giving them information" and "[a]nswering phones" as the transferrable skills. (*Id.*)  The ALJ expressly relied on this testimony in concluding that Plaintiff

acquired work skills from her past relevant work as a medical receptionist and that such skills are transferrable to the job of general office receptionist.  (*Id.* at 33.)

Plaintiff's attempts to discredit Turecki's testimony at the second hearing are unsuccessful.  Plaintiff attacks Turecki's testimony on the ground that Turecki "was not provided a description of [P]laintiff's work at the substance abuse clinic" (Pla.'s Br. at 14.)  However, Turecki testified that prior to the second hearing she had "reviewed the evidence provided to [her] regarding [Plaintiff]." (TR at 72; *see also id.* at 74 (referencing Turecki's "review of the file")).  Plaintiff has made no specific showing that the evidence provided to Turecki lacked any relevant information regarding Plaintiff's occupational history.  Moreover, even if Turecki had not reviewed Plantiff's work history before the second hearing, Plaintiff's testimony regarding her job as a medical receptionist at that hearing – for which Turecki was present – was more extensive than her testimony at the first hearing. (*Id.* at 48, 64-65.)  It was the testimony in the second hearing, in which Plaintiff testified that she "discharge[ed] patients" and "set up their appointments," on which Turecki appears to have based her conclusion that Plaintiff possessed transferrable skills.  (*See id.* at 64-65, 73.)  Taken as a whole, the record does not support Plaintiff's contention that Turecki lacked a basis for her conclusion that Plaintiff's skills were transferrable to general office receptionist, nor does the

22

record support Plaintiff's contention that the ALJ erred in relying on Turecki's testimony.

Plaintiff incorrectly relies on Pegram's testimony from the first hearing to support her view that, contrary to Turecki's testimony, her past relevant work afforded her no transferrable skills. Pegram did testify in the first hearing that "there's nothing lower than a light" exertional job to which Plaintiff's skills would transfer (*id*. at 129), and such testimony arguably supports Plaintiff's assertion that she lacked transferable skills. However (and importantly), this testimony from Pegram was not relevant to the ALJ's initial determination that Plaintiff was not disabled because that decision (in 2008) was based on a wholly separate ground: namely, that Plaintiff was capable of performing her past relevant work. (*Id.* at 173 ("Transferability of job skills is not material to the determination of disability because … claimant is 'not disabled,' whether or not the claimant has transferable job skills").) The ALJ made no finding in connection with the first hearing that this testimony by Pegram was credible or accurate. In sharp contrast, in the 2010 proceedings, the issue of Plaintiff's transferrable skills was front and center, and in those proceedings, Turecki testified that Plaintiff's skills *were* transferrable to general office receptionist. That Turecki identified transferable skills that Pegram did not identify is not at all surprising because, as discussed above, Turecki had the benefit of hearing additional testimony in which Plaintiff described in detail the

23

work she performed as a medical receptionist, including giving patients discharge instructions and setting up future appointments. (*Id.* at 48, 64-65.) This Court does not accept Plaintiff's argument that the ALJ should have adopted Pegram's testimony at the first hearing over Turecki's at the second.

Finally, the Court notes that Plaintiff was represented by counsel at both the first and second hearings, and counsel had the opportunity to, and in fact did, cross-examine Turecki at the second hearing. (*Id.* at 79-80.) Plaintiff's counsel asked Turecki, among other things, whether the office receptionist job had requirements for finger manipulation and whether the requirement to ambulate with a cane would reduce the availability of light jobs. (*Id.*) What Plaintiff's counsel did *not* ask Turecki was any question regarding the transferability of skills from Plaintiff's previous work. Plaintiff's counsel had the opportunity at the second hearing – but declined – to examine the alleged conflict between the testimonies of the two vocational experts. Instead, Plaintiff did not challenge Turecki's testimony until after the ALJ issued her decision. In general, a plaintiff may not seek relief based on alleged conflicts in a vocational expert's testimony when plaintiff had the opportunity to cross-examine the vocational expert about the conflicts but did not do so. *See*, *e.g.*, *Ledford v. Astrue*, 311 Fed.Appx. 746, 757 (6th Cir. 2008) ("[N]othing in applicable Social Security regulations requires the [ALJ] to conduct his or her own investigation into the testimony of a vocational

expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the [ALJ]").[4]  Even if Plaintiff's claim that she did not possess transferable skills had merit, the failure by Plaintiff's counsel to cross-examine Turecki on this issue severely undermines Plaintiff's request for relief.

### B. Job Responsibilities as Tasks versus Skills

Plaintiff also asserts that the ALJ erred in concluding that Plaintiff had transferable skills because the skills the ALJ deemed transferrable were "tasks" rather than "skills."  (Pla.'s Br. at 14.)  Specifically, Plaintiff contends that "the capacities to greet people, give information[,] and answer phones are not sufficiently complicated to rise to the level of skills" and instead "represent routine job functions demanded of any worker filling the role of 'general office receptionist.'"  (*Id.*)  As support, Plaintiff cites the O*NET website entry for "receptionists and information clerks," which categorizes "greet[ing] persons," "provid[ing] information," and "answer[ing] telephones" as *tasks* rather than *skills*. (*Id.* at Ex. 1).

Plaintiff's argument is unpersuasive. As used by the SSA for the purposes of making disability determinations, a skill is "knowledge of a work activity which

---

[4]  Plaintiff points out that "guidance from the ALJ [was not] offered" at the second hearing regarding the transferability of skills.  However, it is not clear from Plaintiff's brief what guidance Plaintiff thinks the ALJ should have offered nor how any such omission would result in reversible error.  The Court finds that this argument has no merit.

25

requires the exercise of significant judgment that goes beyond the carrying out of job duties and is acquired through performance of an occupation which is above the unskilled level." (Social Security Ruling ("SSR") 82-41.) The SSA further indicates that "[s]kills refer to experience and demonstrated proficiency with work activities *in particular tasks* or jobs." (*Id.*, emphasis added.) The SSA regulations and policy statements do not provide bright-line rules for distinguishing between skills and tasks, and as the previous quotation demonstrates, any such lines would not be easy to delineate. The vocational expert's testimony, and the ALJ's determination, that greeting people, providing information, and answering telephones were transferrable skills does not appear to be precluded by the SSA's definition of "skill." Indeed, the Sixth Circuit has treated comparable job responsibilities as skills. (*See, e.g.*, *Taylor v. Sec'y of Health & Human Servs.*, 891 F.2d 292 (Table), 1989 WL 150763 at *4 (6th Cir. 1989) ("[W]e conclude that plaintiff acquired certain *skills* in her job; namely, *the ability to … deal with the general public*….") (emphasis added).)

Moreover, no SSA regulation or policy statement requires an ALJ to give any weight to the descriptions on the O*NET website. That website "is the complete Dictionary of Occupational Titles (DOT) revised fourth edition, as supplied electronically by the U.S. Dept. of Labor." (*See* http://www.occupationalinfo.org/.) The Sixth Circuit has recognized that the

Commissioner is not bound by the job descriptions in the *Dictionary of Occupational Titles* (the "DOT" or the "Dictionary"). *See, e.g.*, *Monateri v. Commissioner*, 436 Fed.Appx. 434, 446 (6th Cir. 2011) (holding that "the Social Security regulations do not obligate [the ALJ and consulting vocational experts] to rely on the Dictionary's classifications" and "neither the Commission nor the [vocational expert] has an obligation to employ the DOT"). In fact, the SSA recognizes that vocational expert testimony may trump the DOT. *See* SSR 00-4p ("A [vocational expert] may be able to provide more specific information about jobs or occupations than the DOT"). In this case, vocational expert Turecki and the ALJ were not bound by the classification of greeting people, answering phones, and providing information on O*NET as "tasks" rather than "skills," and the ALJ's finding that Plaintiff had transferrable skills is supported by substantial evidence.

Finally, as noted above, when a vocational expert's testimony allegedly conflicts with the DOT, it is the responsibility of plaintiff's counsel to bring out such conflict on cross-examination. *See*, *e.g.*, *Ledford*, 311 Fed.Appx. at 757. Even if Plaintiff's argument that greeting people, answering phones, and providing information are "tasks" and not "skills" had merit, the failure by Plaintiff's counsel to cross-examine Turecki on this issue once again undermines Plaintiff's request for relief.

## **CONCLUSION**

The decision by the ALJ to deny Plaintiff's claim for benefits was supported by substantial evidence based upon the record as a whole.  Plaintiff argues that "all of the requirements necessary for a finding of 'disabled' pursuant to 20 CFR Part 404, Subpart P, Appendix 2, § 201.14, have been met."  (Pla.'s Br. at 15.) However, a finding of "disabled" under the provision cited by Plaintiff requires a determination that Plaintiff does not possess transferrable skills.  As discussed above, the ALJ's conclusion that Plaintiff has skills transferrable to a job as a general office receptionist is supported by substantial evidence.

For all of the reasons stated above, the Court **GRANTS** Defendant's Motion for Summary Judgment (ECF #10) and **DENIES** Plaintiff's Motion for Summary Judgment (ECF #9).

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  June 2, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 2, 2014, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113